## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

LEANDA RAE MUHONEN,                           Civil No. 09-452 (JRT/SER)

                             Plaintiff,

v.                                            **ORDER ADOPTING THE REPORT
                                              AND RECOMMENDATION OF THE
                                              MAGISTRATE JUDGE**
CINGULAR WIRELESS EMPLOYEE
SERVICES, LLC and
COMMUNICATIONS WORKERS OF
AMERICA LOCAL 7200 AFL-CIO CLC,

                             Defendants.

---

Leanda Rae Muhonen, 7601 Chanhassen Road, #305, Chanhassen, MN 55317, *pro se*.

Kathryn Mrkonich Wilson and Jodie F. Weinstein, **LITTLER MENDELSON, PC**, 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402, for defendant Cingular Wireless Employee Services, LLC.

Cristina Parra Herrera and Gregg M. Corwin, **GREGG M. CORWIN & ASSOCIATES LAW OFFICE, PC**, 1660 South Highway 100, Suite 508E, St. Louis Park, MN 55416; and Richard Rosenblatt, **RICHARD ROSENBLATT & ASSOCIATES, LLC**, 8085 East Prentice Avenue, Greenwood Village, CO 80111, for defendant Communications Workers of America Local 7200 AFL-CIO CLC.

Plaintiff Leanda Muhonen brought claims against her former employer Cingular Wireless Employee Services, LLC ("Cingular") and the union of which she was a member, Communications Workers of America Local 7200 AFL-CIO CLC ("Local 7200"), for breach of the collective bargaining agreement between Cingular and Local 7200 and breach of the duty of fair representation.  Defendants each moved for summary

judgment, and United States Magistrate Judge Steven E. Rau recommended that the motion be granted.  Because Muhonen brought her claims more than six months after she knew or reasonably should have known that her grievance had not been filed, and because Local 7200's actions were  not in bad faith, discriminatory, or arbitrary, Muhonen's claim that Local 7200 breached its duty of fair representation fails.  Because Muhonen's case depends on the success of both her claims for breach of the duty of fair representation and breach of the collective bargaining agreement, her claims against Cingular also fail.   The Court overrules her objections, adopts the Report and Recommendation ("R&R") of the Magistrate Judge, and grants defendants' motions for summary judgment.

## BACKGROUND[1]

Cingular employed Muhonen as a customer service representative from October 17, 2005, until her termination on January 20, 2009.[2]  Muhonen was a member of Local 7200 throughout her employment and was a union steward from 2006 until the end of her employment.  A collective bargaining agreement ("CBA") between Cingular and Local 7200 was in place throughout Muhonen's employment.

---

[1] The facts as stated are a summary of the more comprehensive factual background found in the Magistrate Judge's R&R. (Docket No. 244.)  The Court has set forth only those facts relevant to ruling on plaintiff's objections.

[2] Muhonen sued her former employer, Cingular, and her former union, Local 7200, in Hennepin County District Court on or about January 30, 2009, asserting claims pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.  (Docket No. 1.)  Defendants removed the case to federal court on February 25, 2009.  (*Id.*)

Local 7200's Vice President during the relevant period was Cindy Danley, who worked full time for the union.  (Decl. of Cindy Danley ¶¶ 1, 6, Oct. 29, 2010, Docket No. 192.)  Nine Area Vice Presidents ("AVP") reported to Danley.  (*Id.* ¶ 7.)  The AVPs filed and investigated grievances, and attended grievance meetings.  (*Id.*)  Jeff Fellows was Muhonen's AVP until January 2009, when Robert Mayfield replaced Fellows.  (*Id.* ¶ 8.)

Article 7 of the CBA provides "[Cingular] and the Union agree that grievances shall be confined to differences arising out of the interpretation or application of the terms or provisions of this agreement, or disciplinary action for just cause and shall be processed according to the Grievance procedure set forth in this Article."  (Dep. of Leanda Rae Muhonen, Aug. 17, 2010, Ex. 83, Aff. of Jodie F. Weinstein, Nov. 1, 2010, Docket No. 184.)  The CBA provides that Local 7200 processes the first two steps of the grievance and the International Union processes the third step.  (Danley Decl. ¶ 16.)  To initiate a grievance, an employee first completes a Statement of Occurrence form.  (*Id.* ¶ 17.)  Union stewards, including Muhonen, had blank Statement of Occurrence forms.  (Muhonen Dep. at 315:18-22.)   If the employee does not complete a Statement of Occurrence form and provide it to Local 7200, Local 7200 cannot file a grievance.  (*Id.* at 315:23-316:4.)  Under the CBA, a grievance is required to be filed within thirty days of the occurrence.  (*Id.* at 315:4-7.)

Muhonen alleges that Cingular violated Articles 15 and 16 of the CBA by discriminating against her, and by failing to establish an occupational health and safety committee to protect her from alleged violence by co-workers.  Article 15, regarding

Non-Discrimination, provides, "[Cingular] and the Union agree that they will not discriminate against any employee covered by the Agreement because . . . the person is disabled . . . or [based upon] other protected classifications recognized by Federal or applicable state/local law." (Muhonen Dep. Ex. 83.)  Article 16 of the CBA, regarding Safety, provides that Cingular and Local 7200 would establish a committee to make recommendations on occupational health and safety matters. (*Id.*)

In early April 2006, one of Muhonen's co-workers reported an incident to management suggesting Muhonen was swearing during a customer call (though not directly to the customer), when working at a call center. (Muhonen Dep. Ex. 16.)  Later that month, Muhonen's psychologist prepared a letter asking that Muhonen receive a work accommodation for her Posttraumatic Stress Disorder (PTSD) to allow her to work "offline" (i.e. not on customer calls). (Muhonen Dep. Ex. 22.)  On August 28, 2006, the psychologist completed a Cingular form documenting Muhonen's request for an accommodation. (*Id.*)  Cingular granted Muhonen's request on September 9, 2006, effective until September 2008. (Muhonen Dep. at 141:23-142:4.)

Muhonen was disciplined multiple times while working at Cingular, including for attendance issues in May and July 2006, (Muhonen Dep. Ex. 19-21), for violating Cingular's Code of Business Conduct in September 2007 by using another employee's computer to log into the timekeeping system, (Muhonen Dep. Ex. 33), for sending inappropriate broadcast emails criticizing supervisors, (Muhonen Dep. Ex. 41), and for discussions and interactions with her team manager Phil Doron, during which she

repeatedly left in the middle of a conversation regarding appropriate behavior (Muhonen Dep. Ex. 9).

In the summer of 2008, Nancy Heineman became Muhonen's supervisor. (Muhonen Dep. at 89:23-90:8.) Heineman reported to Area Manager Ted Osborn, who in turn reported to Associate Site Director Jason Iwasko. *Id.* On the afternoon of August 5, 2008, Muhonen approached Heineman to discuss several issues, including a team perception that Heineman was favoring an employee named Meghan McReynolds. (Muhonen Dep. at 206:21-208:19.) On August 7, 2008, Heineman approached a group of employees, including Muhonen, who were discussing McReynolds and other team issues. (Decl. of Nancy Heineman ¶¶ 3-4, Oct. 29, 2010, Docket No. 180.) During the discussion Muhonen stated that McReynolds called Heineman at night to report on what the team was doing. (*Id.*) Heineman initially denied that McReynolds called her at night, then corrected herself and stated that McReynolds called her one time in regards to who was supposed to bring bagels to work the next day. (*Id.*) Heineman and Muhonen dispute what happened next. Heineman asserts that as she was explaining the situation to Muhonen:

> I tossed my cell phone in Ms. Muhonen's direction and told her that she could check my phone to verify what I was telling her. The cell phone slipped out of my hand as I was tossing it and it landed on Ms. Muhonen's desk. I apologized right away to Ms. Muhonen as I had not intended the terrible toss. I had absolutely no intention to harm Ms. Muhonen or to frighten her . . . . After this incident occurred, Mr. Osborn met with me and counseled me regarding more professional and effective ways to respond to employee situations . . . .

(*Id.* ¶¶ 3-4.)  Muhonen characterizes the encounter differently.  She says that when she brought up the subject of McReynolds' allegedly favorable treatment, Heineman's face became red and she got angry.  (Muhonen Dep. Ex. 54.)  Muhonen says that Heineman did not "toss" the phone, instead she "threw it over 60 miles per hour directly at my head . . . . And it did not hit the desk between me and Erika [as Heineman alleges].  It directly hit my desk right by my head . . . .  And she did not say it was a terrible toss."  (Muhonen Dep. at 213:24-214:6.)  Muhonen reported the incident to the police, but charges were not filed because the phone did not hit her.  (Muhonen Dep. at 226:25-227:3.)  Muhonen completed a Statement of Occurrence form and gave it to Robert Mayfield, a union steward.  (Muhonen Dep. 217:24-219:21.)  Muhonen also reported the incident to area manager Robert Williams.  (Muhonen Aff. Ex. A at 2-3, Docket No. 206.)

After Muhonen provided Mayfield with the Statement of Occurrence form for the cell phone incident, Mayfield emailed Muhonen to inform her he had given the Statement of Occurrence form to another steward, John Mulloy, to take to Local 7200's offices. (Muhonen Aff. Ex. A at 7.)  Mulloy did not provide the Statement of Occurrence form to Danley at the Local 7200 offices as required to initiate the grievance until the October 2008 membership meeting, more than thirty days after the incident.  (Danley Decl. ¶ 21.) Because more than thirty days had passed a grievance would have been untimely under the CBA and therefore Danley did not file a grievance.  (*Id.*)  Muhonen testified that Mulloy's failure to get the Statement of Occurrence form to Local 7200 on time was negligent, but that Mulloy was not trying to hurt Muhonen.  Danley also testified that she did not file the grievance because "even if the union could prove that supervisor

Heineman 'assaulted' Ms. Muhonen with a cell phone, this would not violate the [CBA] and there was no remedy available under the [CBA]."  (Danley Decl. ¶ 22.)  Muhonen did not lose any pay or benefits as a result of the cell phone incident.  (*Id.* ¶ 23.) Muhonen stated that she wanted to be moved off Heineman's team because of the alleged assault, but acknowledged that the CBA did not provide any right for the union to transfer her to another team or department.  (*Id.* ¶ 23; Muhonen Dep. at 334:4-336:19.)

Muhonen had not seen a grievance filing notice from Local 7200 by the end of September and was aware that the grievance needed to be filed within thirty days of the incident.  (Muhonen Dep. at 333:2-7.)  By the end of October, Muhonen concluded that Local 7200 was not going to do anything about the cell phone incident.  (*Id.* at 333:15-24 ("Q: So by the end of September, is it fair to say that you were pretty confident the union had screwed up and not filed a grievance for you? A: I was leaning that way, yes.  Q: [] So probably by the end of October, you're saying this union is not doing anything for me, correct?  A: Yes.").)

On December 15, 2008, Heineman spoke to Muhonen regarding an error Muhonen made in her work, and explained that she expected Muhonen to partner with other teams in the organization to produce the highest quality work.  (Heineman Decl. ¶ 10.) Heineman went on to state that she was concerned that, because of the economy, Cingular might not need twenty-three customer service representatives in the enrollments team, but claims she did not say anything about Muhonen's job specifically.  (*Id.*) Muhonen interrupted Heineman and claimed she was threatening Muhonen's job.  (*Id.*) Heineman said this was not the case and apologized for any misunderstanding.  (*Id.*)

Several more incidents occurred that day, prompting Heineman to produce a detailed summary of the day's events which she sent to Osborn.  (Heineman Decl. ¶¶ 11-12.) Osborn prepared a Quick Investigative Report into Muhonen's behavior, and interviewed four of Muhonen's team members.  (Muhonen Dep. Ex. 9.)  Three of her co-workers found her conduct intimidating.  (Decl. of Tom Osborn ¶ 19, Oct. 29, 2010, Docket No. 182.)  On December 17, 2008, Osborn and area manager Dave Peterson interviewed Muhonen with union steward John Mulloy present.  (Muhonen Dep. Ex. 9.)  In response to questions about inappropriate emails and loud talking, Muhonen stated that others also sent inappropriate emails and spoke loudly.  (*Id.*)  After consultation with Human Resources and Iwasko, Osborn recommended that Muhonen be terminated because she intimidated the team and created a hostile working environment.  (Muhonen Dep. Ex. 9.) Muhonen was terminated on January 20, 2009.  (Muhonen Dep. at 293:9-25.)

On or about January 28, 2009, Mayfield sent Muhonen a letter stating that if she wished to pursue a grievance for her termination, she should notify him by February 11, 2009.   (Muhonen Dep. at 338:13-339:14.)   Muhonen never contacted Mayfield. (Muhonen Dep. at 342:4-8.)  The parties dispute whether Muhonen asked Danley for the paperwork necessary to file a grievance, however there is no dispute that Muhonen did not file or pursue a grievance, nor did she complete a Statement of Occurrence form for her termination.  (*Id.* at 338:6-7 ("Q: You filled out a statement of occurrence? A: For the termination, no.").)  Danley states that because Muhonen did not file a Statement of Occurrence for her termination, neither she nor Mayfield filed a grievance on her behalf. (Danley Decl. ¶ 24.)

Defendants filed separate motions for summary judgment on November 11, 2010. (Docket Nos. 175, 187.)   The Magistrate Judge issued an R&R on April 7, 2011, recommending that defendants' motions for summary judgment be granted.   (Docket No. 244.)  Muhonen filed timely objections.  (Docket No. 245.)

## ANALYSIS

### I.   STANDARD OF REVIEW

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  This Court reviews the challenged portions of an R&R *de novo* under 28 U.S.C. § 636(b)(1)(C) and D. Minn. L.R. 72.2

### II.   MUHONEN'S OBJECTIONS

Because Muhonen is pursuing this matter *pro se*, this Court must liberally construe her pleadings.  *See Haggy v. Solem*, 547 F.2d 1363, 1364 (8th Cir. 1977).  Muhonen's objections to the R&R can be summarized as follows: the R&R erroneously left out key direct evidence; the R&R erroneously finds res judicata and collateral estoppel; the R&R

fails to address Muhonen's purported direct evidence of conspiracy; the R&R erroneously granted summary judgment to defendants regarding Muhonen's claims for fraudulent concealment; and the R&R fails to appropriately apply the Federal Rules of Civil Procedure ("Rules"). (Pl.'s Obj. at 1-2, Docket No. 245.)

## III.   HYBRID CLAIMS UNDER SECTION 301 OF THE LMRA

Section 301(a) of the LMRA authorizes "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations."  29 U.S.C. § 185; *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  Courts recognize a "hybrid claim" under the statute whereby an employee pursues a claim against the employer for breach of the CBA and against the union for breach of the duty of fair representation.  *Scott v. United Auto.*, 242 F.3d 837, 838 (8th Cir. 2006).  Under a hybrid action an employee "must show that the employer breached the terms of a CBA **and** that the union breached its duty of fair representation under that CBA."  *Miner*, 513 F.3d at 860 (emphasis added); *see also Scott*, 242 F.3d at 839.

Because the Court finds that Muhonen's claim for breach of Local 7200's duty of fair representation is time barred, and Local 7200's actions were not in bad faith, arbitrary, or the product of discrimination, Muhonen's claims against Local 7200 fail, causing the remainder of her claims to fail.

### A.      Duty of Fair Representation

The Magistrate Judge recommended that Local 7200's motion for summary judgment on Muhonen's claim for breach of the fair duty of representation be granted for three reasons: (1) the claim is time barred; (2) the union's failure to file a grievance was mere negligence; and (3) the failure to file the claim did not harm Muhonen.  (R&R at 21-22, Docket No. 244.)

The statute of limitations for bringing a breach of the duty of fair representation claim is six months from the time the employee knows or reasonably should have known of the union's alleged breach.  *Scott*, 242 F.3d at 839 (citing *Evans v. Nw. Airlines, Inc.*, 29 F.3d 438, 441 (8th Cir. 1994)).  The cell phone incident occurred on August 7, 2008.  Under the CBA, Local 7200 had until September 6, 2008, thirty days from the incident, to file the grievance.  Muhonen acknowledged thinking that her grievance had not been filed at the end of September, and knew by the end of October that Local 7200 had "screwed up."  The statute of limitations thus began to run at the latest on October 31, 2008 and Muhonen needed to file a complaint on or before April 30, 2009.  Muhonen actually filed her complaint on May 9, 2009, at least nine days after the six month statute of limitations had expired.

Muhonen's objections suggest that some sort of equitable tolling is appropriate due to fraudulent concealment or a conspiracy.  (Pl.'s Obj. at 3, 16, 18, Docket No. 245).  However, Muhonen testified she knew no grievance had been filed at latest by the end of October 2008.  (Muhonen Dep. at 333:4-24.)  The statute of limitations thus began running at that time and Muhonen's failure to file her claims within six months bars her

claims. *See Kan. City, Mo. v. Fed. Pac. Elec. Co.*, 310 F.2d 271, 284 (8th Cir. 1962) ("[T]he limitation period begins to run from the time that plaintiff by the exercise of reasonable diligence, discovers or should have discovered the cause of action.").

Even if any of Muhonen's arguments relating to equitable tolling applied, Muhonen has presented no evidence suggesting that Local 7200's failure to timely file her grievance was more than negligence. A union breaches its duty of fair representation **only** when its conduct towards a union member is arbitrary, discriminatory, so unreasonable as to be irrational, or in bad faith. *See Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 78 (1991); *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). Union's actions that are mere negligence, poor judgment, or ineptitude, do not constitute a breach of the duty of fair representation. *Jones v. United Parcel Serv., Inc.*, 461 F.3d 982, 994 (8th Cir. 2006).

A union's conduct is deemed arbitrary if, considering all the circumstances at the time of the union's action or inaction, "the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Cross v. UAW, Local 1762*, 450 F.3d 844, 847 (8th Cir. 2006). A union's actions are discriminatory if the union fails to serve "the interests of all members without hostility or discrimination toward any." *Vaca*, 386 U.S. at 177. A showing of bad faith requires proof of "fraud, deceitful action, or dishonest conduct." *Gaston v. Teamsters Local 600*, 614 F.3d 774, 778 (8th Cir. 2010).

Muhonen has presented no evidence raising a genuine issue of material fact that Local 7200's conduct was arbitrary, irrational, or discriminatory conduct, or in bad faith. Though Muhonen objects that Local 7200 had an obligation to do an immediate

investigation to determine if there was sufficient evidence to warrant filing a grievance, and that failing to do so demonstrates bad faith, she provides no citation to any law or policy requiring Local 7200 to do so. Mere negligence or ineptitude does not amount to a breach of the duty of fair representation. *Gaston*, 614 F.3d at 778; *see also Hansen v. Qwest Commc'ns, Corp.*, 564 F.3d 919, 926 (8th Cir. 2009) ("[W]hile a union's failure to notify a grievant may be negligent and in poor judgment, such an omission, without anything more, does not violate a union's duty of fair representation." (citation omitted)). The failure to deliver the Statement of Occurrence form, while likely negligent, is not so far outside the wide range of reasonableness as to be irrational. Further, this Court finds no evidence giving rise to a genuine issue of material fact that there was bad faith or discriminatory motive on the part of Local 7200.

Finally, there is no evidence that Local 7200's failure to file a grievance over the cell phone incident resulted in irreparable harm to Muhonen. A plaintiff pursuing an action for breach of the duty of fair representation must also establish that he or she was harmed or prejudiced by the union's act or omission. *See Matthews v. Milwaukee Area Local Postal Workers Union*, 495 F.3d 438, 441 (7th Cir. 2007). Muhonen did not lose pay or benefits as a result of the alleged assault, and though she requested a transfer from Heineman's team, she acknowledged that this remedy was not provided for by the CBA. This is not to say that Muhonen suffered no harm from the incident. Muhonen suggests that she suffered increased anxiety and panic attacks following the cell phone incident. However, damages for "emotional distress" are not usually available in ordinary breach of duty of representation claims based on the union's failure to file a grievance.

*Richardson v. Commc'ns Workers of Am.*, 443 F.2d 974, 982 (8th Cir. 1971).  Thus, the Court cannot provide a remedy for the type of harm Muhonen claims to have suffered.

Because Muhonen brought her claim more than six months after when she knew or reasonably should have known of the failure to file the grievance, her claim for breach of the duty of fair representation is time barred.  Further, Muhonen was not harmed by what appears to be the negligent conduct of Local 7200.  As a result, the Court finds summary judgment related to the cell phone incident is warranted, and grants Local 7200's motion for summary judgment.

### B.  Termination

Muhonen also alleges that Local 7200 breached its duty of fair representation by failing to pursue a grievance on her behalf related to her termination.  However, a plaintiff may not succeed on a breach of fair representation claim where the plaintiff does not demonstrate that she affirmatively requested the union to pursue the grievance. *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir. 1987) ("[I]f a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him."); *Flanigan v. Int'l Bhd. of Teamsters, Local 671*, 942 F.2d 824, 829 (2d Cir. 1991).  Though there is a fact dispute as to whether Muhonen asked Danley for the paperwork to file a grievance, it is undisputed that Muhonen never provided the union with a Statement of Occurrence form or asked anyone to file a grievance on her behalf.  (Muhonen Dep. at 338:2-12.)

Muhonen objects that the letter advising her to contact Mayfield about filing a grievance gave her only twenty-one days, instead of the required thirty, to file a grievance, thus she did not file the grievance, failing to give her sufficient time.  (Pl.'s Obj. at 23.)  Regardless of whether the letter itself stated an inaccurate amount of time to file, the letter does state that Muhonen needed to contact Mayfield if she sought to file a grievance, which she never did.  Muhonen also objects that the R&R "erroneously finds res judicata and collateral estoppel . . . ."  (*Id.* at 1.)  However, the R&R does not discuss res judicata at any point, and refers to collateral estoppel only in a parenthetical description in the context of the standard courts use to review termination of employees for "just cause."  (R&R at 30.)  Though Muhonen objected that the Magistrate Judge failed to follow the basic principles of the Federal Rules of Civil Procedure and erroneously granted summary judgment to defendants, no evidence suggests that the Magistrate Judge failed to abide by the Rules, and the R&R recommended, rather than ordered, that this Court grant defendants' motion for summary judgment.

Muhonen states that summary judgment should be denied because evidence exists of a conspiracy to terminate her employment, when union steward Keller sent Heineman an email about Muhonen's behavior.  (Pl.'s Obj. at 12-14.)   Muhonen has not brought a claim for conspiracy, nor will the Court read her complaint as containing such a claim. Though the Court must construe her pleadings liberally, the Court is not required to actually make pleadings on her behalf.  As such, Muhonen has not provided sufficient evidence demonstrating a genuine issue of material fact that Local 7200 breached its duty

of fair representation by failing to file a grievance, when no evidence suggests she ever attempted to file a grievance.

### C.    Claim Against Cingular

Because Muhonen's claim for breach of Local 7200's duty of fair representation fails, her hybrid claim as a whole fails and it is not necessary to analyze her claim that Cingular violated the terms of the CBA. *See Jones*, 461 F.3d at 994 (determining that the court need not decide whether defendant violated the CBA because plaintiffs did not provide sufficient evidence generating material issues of fact regarding breach of the union's duties of fair representation); *Waldron v. Boeing Co.*, 388 F.3d 591, 594 (8th Cir. 2004); *Tripp v. Angelica Corp.*, 921 F.2d 794, 795 (8th Cir. 1990) ("Because the district court had already granted summary judgment for the Union concluding that there was no breach of fair representation, appellant could not maintain her section 301 action."); *Jorgenson v. Qwest Corp.*, Civil No. 07-3979, 2008 WL 2102206, at *4 (D. Minn. May 16, 2008) ("[E]ven if the Court construes plaintiff's breach of contract claim as an adequately-pled, § 301 hybrid claim, the claim must still be dismissed for failure to comply with the statute of limitations."). Thus, the Court also grants Cingular's motion for summary judgment.

## ORDER

Based on the foregoing and the records, files, and proceedings herein, the Court **OVERRULES** plaintiff's objections [Docket No. 245] and **ADOPTS** the Report and

Recommendation of Magistrate Judge [Docket No. 244].  Accordingly, **IT IS HEREBY ORDERED** that:

1.      Defendant Cingular Wireless Employee Services, LLC's Motion for Summary Judgment [Docket No. 175] is **GRANTED**.

2.      Defendant Communications Workers of America Local 7200's Motion for Summary Judgment [Docket No. 187] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  July 18, 2011                            _____s/ John H. Tunheim_____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                     United States District Judge